Thank you. The next case on the calendar is Diaz v. Westco Chemicals, 22-55823. Whenever you're ready, Counsel. Good morning. My name is Michael McKay. May it please the Court, I represent Mary Rusetti Diaz and Cater Perez, who are the appellants. I would like to reserve three minutes for rebuttal. I'd like to begin by thanking the Court for making time. It's an honor and a privilege to be here. We are asking the Court, well, do any of the Judges have, any of your Honors have questions? I'm sure we will. But this is a rare opportunity where we're not jumping in, so you might want to take advantage of it. This is an important case with some very clear and obvious facts. When the, this case involves arrests, there are claims, and it's important to refocus on the claims that are at hand. A claim for breach of the duty of prudence and a breach of the duty of loyalty. The facts in this case that are undisputed is that several years ago, a pension plan was created by a family business that's worth several million dollars. The pension plan received a settlement and a lawsuit, and rather than pay taxes on the money, the pension plan was created. Undisputed facts in this case show that the pension plan suffered from an enormous amount of infirmities. For many, many years, the pension plan wasn't administered the way it should have been administered. That's been cleaned up, has it not? The IRS has given the seal of approval that it's back into compliance? Not necessarily. Is that a fair summary? One of the important facts, and it's in the Daniel, the Daniel Draney Declaration, is he says that when the pension plan was created initially, it was never designed to be a legitimate pension plan, to provide pension benefits for employees. It was always designed and intended to provide all of the money that was obtained in the settlement to divert that money back to the owners of the company, and there's really no dispute about that. But the plan was approved, right? Excuse me, Your Honor? The plan was approved. A plan was approved by whom? The government approved it, didn't they? Well, I believe you're speaking about the IRS conducting examination, and it was a limited examination to determine whether or not the plan complied with the IRS tax regulations. The IRS very specifically never looked at whether the plan was being operated consistent with ERISA, and whether the fiduciaries to the plan administered the plan with what this Court has repeatedly characterized as under the highest duties known to law, solely in the interest of plan participants and plan beneficiaries. But why was the district court wrong on that? If we could go back to the 30,000-foot level, I think it's also uncontested. They didn't have to have an ERISA plan. They did have an ERISA plan. And what the district court seemed to have decided is that your client's real concern was that they received the benefits to which they were promised, which they were entitled under the plan. And I think the district court's understanding was your client's beef is that they weren't promised enough. Well, and that goes to the— Is that wrong? Yes, it is, Your Honor. That goes to the crux of why we're here today. Respectfully, the district court misconstrued and didn't apply the law in which the claims were brought. And that's the law of ERISA. Okay. So let me just back up. My understanding of what the district court did is correct, but you think the district court erred. Is that right? Or do I misunderstand the district court's reasoning? Well, I think it's an oversimplification of the claims here. And I think the district court failed to consider the ERISA duties of loyalty and prudence, failed to consider that our beef is not just about the amount the plaintiffs are receiving here. It's a much broader beef than that. When I say plaintiffs, I mean the plaintiff participants. Big picture. You referenced the big picture. Big picture. All of this money—and this seems to be undisputed. All of this money was deposited into a pension plan, and all of the money is going back to the owners of the company and their family members. It's also undisputed— You know, I understand you don't—I'm sorry. No, please, please. I understand that argument that most of the money goes to the people in the first category. But my problem with your argument is that it's stolen. It seems to me that that is dispositive of the question of standing. Article III, what's the injury in fact that you're alleging here? Let's talk about Thole. Thank you for raising Thole. Well, you didn't spend much time on Thole. Because I think Thole is absolutely different than the facts here. How is it different? I'm focusing on standing right now. Okay. In Thole, the plaintiffs allege that the ERISA breach— We know what Thole says. What's your injury to answer, Judge? The injury— And Tom's question. What's the injury you're complaining of here? The injury here is that if we are successful with our claims, unlike in Thole, which plaintiffs would not have had any difference. Our injury here, we were seeking a reformation of the plan for—on behalf of all plaintiffs. That's a remedy. What's your damage? What's the injury? Is it injury to your clients or is it injury to the plan? Both, Your Honor. We have both. We have Mary Diaz right now. After we filed this lawsuit, she's one of the plaintiffs. She's worked for the company for nearly 20 years, and after 20 years, she has a pension. She's getting what she is entitled to under the plan. I understand you may have problems with the plan, but she's getting what she's entitled to. So how can you claim an injury in fact? Well, she's not getting what she's entitled to under ERISA. Under ERISA, had the plan been administered prudently and loyally in the interest of plan participants, she'd be getting much more money. So does this all— I'm sorry. No, please. Does this all come down to this meaningful benefits? I mean, you're saying the plan needs to be reformulated. I take what you're saying is just to be—the problem here is just that the amounts due to the different plan participants are so off as to violate some promise, and the only promise I can detect that could be violated here is meaningful benefits. And so is that the claim? Because there's some lack of clarity in what you're—in the foundation for this argument. It's not just a lack of benefits, but we've asked the court in our complaint, and the class was certified in this case, to remove these fiduciaries who were acting— But that's a remedy. Could you go back to Judge— Right. What's the violation? Where is the violation here? Because you're not entitled to any pension benefits. You are getting the pension benefits that were promised under the plan. There's no argument that says she was supposed to get $100 and she's only getting $80. She's getting 100 cents on the dollar. It seems that the argument is this is a badly drafted plan, so bad it apparently violates the law or the contract. Yes. And that's what makes this different than Thole. In Thole, there was no question whether or not the plan structurally was—violated ERISA. Here we're saying, hey, the plan itself—and this goes to the other side's argument. Yeah, so what's the claim? Where's the hook for that argument? That the plan—the way the plan was drafted, it was done so to benefit only the fiduciaries to the plan. So right there. This goes back to meaningful benefits. I have a piggyback question to what both of my colleagues are asking. I think I read—and I think you're verifying that your concern is that the plan was drafted from the beginning so that meaningful benefits were not provided to your clients. I'm not sure what the damage is to the plan, but for the moment. I don't know of any authority that indicates that an ERISA plan has to provide meaningful benefits, that we analyze that on a participant-by-participant basis as opposed to the plan as a whole. It seems to me your concern is about allocation of those benefits. No, Your Honor, it's—my concern—well, it's both. The plan as a whole—the plan as a whole—and that goes to the contract that is so important here. The plan was—fundamentally violates ERISA because it was never drafted, never implemented, and it doesn't provide benefits solely—the fiduciaries are not administering the plan and did not create the plan solely to provide benefits to the plan's participants and beneficiaries. That is a violation. If you could go back to the way Judge Anne Tome was trying to get at this, the plan has different levels of beneficiaries, right? And it's not—this is not a pro-rata distribution for sure. Some classes of beneficiaries—that's my word—receive a whole lot more in defined benefits. But when we look—and when the IRS looks—to see whether or not the plan as a whole provides meaningful benefits, is it done on a per capita basis, or do we look at the plan as a whole? Do you know what that certification means? Well, I take a—I disagree with the certification a little bit, and this goes to the next level, and this is in the declarations. That top level of employees who get the highest benefits—many of those top level employees only work for the company for a few weeks. I understand that you think it's unfair, sir, but we're trying to figure out where there's a legal cause of action. Well, that goes to show that the plan was not adopted, was not implemented by its fiduciaries to provide legitimate, meaningful benefits to employees, but it was a ruse. It was a bit of a trickery. What's your best case law that says that when an ERISA plan is—I'm not saying there isn't any, but I haven't seen it—what's your best case law that says when an ERISA plan is set up from the outset in order to provide a tax shelter and not really to provide meaningful benefits to the beneficiaries as a whole, that that is subject to reformation? Well, and I practice almost exclusively in ERISA, and I'm not aware of any such plan. I'm not aware of any such cases. I think these facts here are so outrageous, and look at this from a policy standpoint. No, I don't want to look at it from a policy standpoint. Not yet. Can you tell me what's your strongest argument, what's your strongest legal claim? I just really need to get you to pin that down, if you would. As this Court has stated over and over again, and just recently again, and this was a case that was authored after our briefs were submitted, in the Witt versus— I'm familiar with Witt. The January 2023 opinion. Yes. The Court wrestled with some similar concepts here about standing and whether plaintiffs in a pension plan, like this one here, have damages in standing to contest the way the plan is administered, and the Court found they did, and the same is true here. If you go back to the— So the injury for the individual plan participants is they should have received greater defined benefits? And they did not, because of— Is that a yes or a no? Yes. Okay. What's the injury to the plan, please? The plan is being administered—if you look at all of our allegations, and these are allegations that support the breach of the fiduciary duty of prudence and loyalty. It's undisputed that the plan's formula provides benefits and has provided benefits only really to the owner of the company. It's also undisputed that the plan was not administered according to ERISA's reporting requirements, disclosure requirements, for many, many years. That's another breach of the duty of prudence and loyalty. The reason why it wasn't disclosed to the employees is because the owners and the fiduciaries of the plan wanted to keep the money for themselves. It's undisputed that, unlike in—this is similar to FOLE, but this isn't our claim for damages here. It's undisputed that here, the cash that was used to set up the pension was never invested. It was slowly just being trickled back. A legitimate pension plan would invest that money so that the res grows and it can provide ongoing benefits. It's undisputed here that the fiduciaries froze the plan—they attempted to freeze it once, and then they froze it later to cut off all benefits to anybody else, effectively, except for themselves. These are all—these are all allegations that support a breach of ERISA's duty of loyalty. But what the district court said in response to this was that to the extent these prior breaches or errors placed the plan at risk, those errors had been corrected. And then it goes on to say that the plaintiffs present no evidence suggesting otherwise and don't contend in any way that the plan is currently underfunded. So how do you respond to that? Well, two things. One, as you know, the district court, in order to get there, the district court had to find that it refused to consider any of the evidence that was submitted by the plaintiff because—by the—by appellants because of a local procedural rule. And we're here de novo, so we don't have that problem. But we also know that the Ninth Circuit has some other— Well, we kind of do have that problem. I mean, we don't just override lightly the district court's application of its own rules. Had the district court considered the affidavits or the declarations that are before this court of Daniel Draney saying, hey, I was an executive at Wesco and I know that they hid this from everybody and they did not disclose it and that this was a plan from the beginning and they were acting with evil minds? Had the district court considered that, he wouldn't have been able to get to where he got. Had the district court considered the—on the underfunded issue, though also touches on underfunding, we're not making a claim—and there's no law that says in order to have a permanent danger of failure. Had the district court considered, however, the affidavit declaration of our expert Mitchell Bilby, an actuary, Mitchell Bilby says, hey, look, if this plan is operated in the best interest of the plan participants and not simply used to funnel money back to the owners, the plan is underfunded. If the plan provides meaningful benefits, the plan is underfunded. And just one last touch that I think the district court got wrong, too. The IRS submission. The IRS doesn't address claims of duties of prudence and loyalty. This was a corrective action that was taken after this complaint was filed and it was limited and the IRS didn't say that this plan has corrected. The IRS didn't come back and say there's no violations of a risk. The IRS did not say that the fiduciaries here acted loyally and prudently. It just didn't happen. Do you want to say something? Thank you, Your Honor. You bet. Good morning, Your Honors. May it please the Court, my name is Joe Fauché and I represent the appellees and the defendants in this matter. May it please the Court, before addressing some of the points that have been raised by counsel, I'd like to point out that there's a recently decided case, actually decided by Judge Bress in March of 2023, the Windsor v. Sequoia benefits case, that addresses the claims that plaintiffs there sought equitable relief and whether or not that would entitle them to circumvent the issue in Thole. And for the same reasons that the Court decided in the Ninth Circuit in the Windsor case, and the site there is 62 F. 4th 517, for the same reasons there, the points that were raised for the very first time on appeal by the appellants arguing that they somehow were able to circumvent the Thole decision by virtue of the fact that they were seeking equitable relief, by virtue of that same rationale that was applied in the Windsor case, the same rationale applies here. To the extent that the appellants purport to be seeking equitable relief, an argument that they did not make at all on summary judgment at the District Court. We talk about the meaningful benefits theory because there's a lot being said on the other side. The argument seems to be, well, this was just a illegally constructed plan that didn't properly allocate benefits across the participants. And is there a claim for that? Is there a cause of action for that? Is there standing for that? What's your response? Well, the meaningful benefit rule is encompassed by Internal Revenue Code Section 401. And there is no cause of action for a purported violation of 401. That's true. But what about the fact that it's referenced in the plan? It doesn't say anything beyond the fact that we're going to comply with the meaningful benefit requirement, which is encompassed in 401. Right. So could someone come to a court and say, it's in the plan, it says meaningful benefits, you're not providing that. That states that is a claim one could bring? Theoretically, but it's baked into the plan. I think it's a set law issue. And more to the point. Sorry, you think it's a what? Oh, I apologize. I just didn't hear you. A set law issue versus a fiduciary function. It's not the manner in which the plan's being operated. It's what the plan itself provides for. And there's been a lot of talk, both in the brief and today, by appellants counsel suggesting that the plan was illegally constructed. There's simply no evidence of that. There's no testimony on the record to that effect. But there is, to follow up on Judge Bress's point, which I think is a really interesting point, there is a representation in the contract, if you will, that meaningful benefits will be provided. What I'm trying to get at is even if we take that as a representation of promise, in the ERISA plan document, I'm not sure there has been a showing that meaningful benefits haven't been provided. Because the implied premise, I think, is that meaningful benefits would have to be judged on a participant-by-participant basis, as opposed to the plan as a whole. I think their argument is that meaningful benefits were promised, and they're really complaining about the allocation of those benefits. That's different than saying the plan doesn't provide meaningful benefits. But there's no— They want a bigger piece of the pie. That's a different—that's something different. Well, yes, Judge Christin. I think they do want a bigger piece of the pie, but there's nothing in the law that says they're entitled to it. No, I—we just spent 15 minutes trying to figure out what is the cause of action. But I think both things can be true, following up on Judge Bress's question, because I think it's a really interesting question. Right? Typically, it's easy to set aside the meaningful benefits requirement because that's an IRS tax code issue, and there isn't a private cause of action. It is the case, I think—I think I agree with Judge Bress—that the plan document also represents that meaningful benefits will be provided. So you could construe that as a contractual promise. It's just that I'm not sure they can show that it was breached. Well, I don't think you can imply a promise that is somehow different than what the law is that it refers to. Right. So I'm trying to give him all of those points, right? All of those points, and say it's an enforceable obligation, there could be a cause of action for breach of contract. I'm just using that as a hook, but it still seems to me that we'd have to have some kind of an indication that the plan isn't providing meaningful benefits, and I don't see that here. I agree with you, Your Honor. I don't see it either, and I've tried to address it every which way. And all I can think to do in responding to it is to point out that Internal Revenue Code Section 401 says what it says. There's very little guidance beyond that except for the Shultz Memorandum, which recited in both briefs, which specify what sort of a floor is. The plan complies with that floor as set forth in the Shultz Memorandum. And so for the court now to come up to, I mean, essentially I think what appellants are asking the court to do is to change the law with respect to what meaningful benefits means. All the plan does is refer to Section 401. So is it your understanding that the harmed party here is the plan, or the individual participants? Well, Your Honor, I've been trying to figure that out, and in our briefing we attempted to address all of those issues. Paragraph 81 of the complaint purports to refer to losses to the plan. Paragraph 87 of the complaint, which terminates the second claim for relief in the complaint, also purports to seek losses to the plan. And when you read the complaint, at the time what we were dealing with was the allegation, one, that the plan assets weren't invested appropriately, and two, that assets of the funneled off to the owners of the company. It's two sides of the same coin, Your Honor, as to that issue. If we're focusing on purported losses to the plan, they could only come from two sources. One is just like the issue that we had in Thole, where the allegation was that the plan assets were invested imprudently. The plaintiffs here in their complaint made that allegation. And as to that, I think we all understand now that Thole would not recognize a cause of action for purported imprudent investments of defined benefit plan assets, so long as the plan is capable of delivering the benefits that it provides for. And we've presented uncontroverted facts that that's the case here. And the same is true with respect to the allegation that the plan assets have been somehow, that excess assets or excess plan assets have been distributed to the owners of the company. That's the same, that's the flip side of the same coin. There is no evidence in this case that the plan is not capable of delivering the exact benefits that it's obligated to deliver. And in fact, and contrary to many things that the appellants have stated both in their briefing and today, benefits are being distributed to other plan participants. Specifically, they're being distributed to Mary Diaz, who's the named plaintiff here. And there's no evidence in the record that any other participants besides Allens Willinger have even requested distribution of their benefits or that they are eligible for distribution of their benefits given their employment status. So there's simply no evidence in the record whatsoever that the plan isn't currently paying benefits to other participants in the plan that are eligible to be receiving those benefits. The claims here were brought as claims on behalf of the plan. I mean, did Judge Wright seem to notice some of the issue here that you said, well, the claims are being brought on behalf of the plan, I don't really see how the plan is injured. But to the extent you're trying to bring them on behalf of yourself for benefits due, there were other requirements. I mean, you didn't plead that, but you also would have had to follow other requirements for that kind of claim and you just haven't done that. Yes, Judge Breseth, and in that respect, I had to reread the order myself. But having done it, I think I understand where the court was coming from. And I was able to figure out what it was the court was talking about specifically. And it was that we have two named plaintiffs here. One is Ms. Diaz, the other is Ms. Perez. And in the complaint, Ms. Perez alleges that after her husband died, she believed she was entitled to receive a benefit from the plan that she had not received. If that was true, then Ms. Perez would be entitled to go through the administrative claim process. And that's a claim that arises under 29 U.S.C. 1132A1B. It's a benefit claim under ERISA, which is distinct from Section 1132A2, which is a claim for losses sustained by the plan. And in this instance, Ms. Perez had alleged that somehow, I mean, and I'm paraphrasing, that she had somehow been deprived of benefits that she was entitled to receive from the plan. If that's her claim, then what Ms. Perez is alleging is not a claim for losses to the plan, but rather losses that she claims to have sustained personally in the form of benefits that she claims to be entitled to receive. There's uncontroverted evidence in the record that she never made a claim for benefits under the plan. Right. But that is the, I mean, I've really struggled with this to try to figure this out. And I think opposing counsel just verified that there are claims that are individual in nature, and then he also claims the harm was to the plan. The individual claim, at least, I think, is the one that you just mentioned. I fully appreciate your briefing makes very clear that the benefits weren't applied for. But that's the individual claim, to your understanding. Yes, but there's no claim for relief set forth in the complaint seeking that recovery. At least, I couldn't find it. And I can confirm for you that there's not. I've read it a few times. And at some point, we have to deal with the complaint that we have in addressing them. There are IRS rules that govern just the allocation of benefits across participants, right? Correct. Okay. I take it it's your position that your client's complying with those here? It is. And I would go one step further and say that there's been nothing in the record that would explain to the court how it is that those rules have in any way been violated. Okay. If you're a plan participant and you believe that your plan has been structured in a way that violates this IRS regulation, and that regulation is incorporated into a plan promise, as I think it was here in the plan, do you have any recourse? Well, it's hard for me to respond to that hypothetically, Your Honor, without knowing exactly what requirement we're talking about. If, for example, we're talking about the fact, you know, the so-called top-heavy requirements, then you could argue that, well, top-heavy contributions should have been made and they weren't. Well, that didn't happen here. We actually have uncontroverted evidence that when the plan was top-heavy, the contributions that the plan required to be made to the defined contribution plan were, in fact, made. If we're talking about non-discrimination requirements, there's zero indication in the briefs as to what specific violation. If plaintiffs are claiming that appellees violated those rules in any way, they don't say it. But in response to your question, ordinarily, Your Honor, I would say that those issues are ones for the IRS to rule upon, and that if the plan satisfies, in its form, the non-discrimination rules, then there is no recourse. But, I mean, there's some—what's sort of odd about this is that, you know, if you thought the plan was too lopsided, one way to do that is to chew up people on the bottom. The other way to do that is to take some off the top. It doesn't necessarily mean that somebody who's receiving the lowest amount is all of a sudden going to get more. They may not. That's correct. And there's nothing requiring it that they would. So, your answer to Judge Bess's question is the one you gave a few minutes ago. No private cause of action for violation of the Meaningful Benefits Rule. There is no private cause of action for violation of the Meaningful Benefits Rule. And, by the way— Yeah, but that's the part we're not pushing back on. The question that he's asked, and I think a couple of us have asked it now, is if you just go with us on this hypothetical, if there's a representation made, a promise made in the document, and a plan participant thinks that promise has been broken, you're telling us you still think there wouldn't be a private cause of action. Well, again, and I don't mean to be difficult about it, Your Honor, I can only deal with the facts that we have. Sure. And the facts that we have are that the plan is providing the benefits that it says it will. Okay. And so, I'm trying to get you to engage in this hypothetical, because I'm trying to figure out what the claim would be. Well, I am, too. I mean, I suppose theoretically, someone could say that the plan—I mean, if the plan says what it says, but the participant says that's not enough, based as a matter of law, theoretically, they could seek reformation. But the complaint in this case doesn't ever mention reformation. Right. So, I'm at a bit of a loss to, you know, I don't want to be dishonest with the court, but I also need to understand exactly what hypothetical cause of action could be brought to— Right. You know, it's kind of a weird claim. That's what we're trying to do. It's kind of a weird claim to say, I shouldn't necessarily get more, but definitely those people who are making more money, they should get less. Well, yeah, and theoretically, again, as to the claim that those people who are making more should be getting less, I think that really sweeps us right back into fold. Maybe you don't like that they're getting more than you think they should. But it's a defined benefit plan. It's a defined benefit plan, and you're still getting what you're supposed to get. And anything else is an IRS issue. But if somebody believes the plan is legally constituted, is that claim routed through a A1B theory, or is that claim routed through an injury to the plan theory? I mean, I think if you have a legitimate argument that the plan should be interpreted to provide you with more benefits than you're receiving, that's an A1B issue. It's not a—there's no plan losses that are happening there. And I think that's the element of what the district court said in analyzing that point. Judge Antone, do you have additional questions? I do not. Thank you. I think that's all the questions we have. Thank you so much for your patience with our hypotheticals. May it please the Court, listening to the questions and answers, I just want to follow up briefly. The claim, you are correct, Your Honor, there is language in the plan document itself that promises participants meaningful benefits. And I'll reference for the record—and the plan was amended after the lawsuit was filed. On base number 837, we've got the percentages. The owners of the company effectively get 5.5 percent of their average annual income, which comes out to about $150,000. The lowest here, which is most of the employees, they get one-tenth of one percent of their average annual income over the five years. It amounts to almost nothing. Later that was amended to be one-tenth of their average, but it's nothing. So you asked a good question. So what then? Is it—are participants barred from bringing any sort of claim, or what is the claim? The claim is the breach of ERISA fiduciary duties. It's the fiduciaries who created this plan and are administering the plan for their benefit, for almost their sole benefit. There's very little money going anyplace else. And that has been made apparent by all of the other things that we've identified here. How is this an injury to the plan? Because that's the claim that you brought. I think Judge Wright's—part of his central difficulty with this was how is the plan itself injured here? It's being—the plan is being administered because the fiduciaries are not following the plan document. Wait. The question was how is it—how is the plan injured, and you said administered. Are we—we're looking for injury to the plan. Yeah. The plan itself is being administered because the fiduciaries are being disloyal in connection with the administration of the plan. The plan is a separate legal entity. If the plan itself—in a hypothetical, if the owners of the company said, hey, we're going to just take all this money from ourselves because the plan says we could, that would be an injury to the plan itself, not any particular individuals in the plan, but that would be a violation of the—it's an—and there are—ERISA failure to follow plan documents is a legitimate claim for prudence and loyalty claims attached to ERISA. What's the strongest case law supporting your cause of action that the plan has been injured here? I would hearken back to the court's opinion and wit. Thank you. Thank you. Thank you both. We'll take that case under advisement and we'll stand in recess for the day.
judges: CHRISTEN, BRESS, Antoon